Good morning, Your Honor. Matthew Collister of the firm of Collister and Reynolds on behalf of the appellant, Show Clubs of America. Give him his ten minutes back, will you? Thank you. Initially, just allow me to thank you for allowing us the opportunity to orally argue this important issue today. It's a pleasure to be here. Justices, in May of 2003, a young associate and or his staff in my office in Las Vegas, Nevada, made a calendaring error. But ultimately, that's my responsibility. It's my firm. And that's why we're here today. In the initial show clubs versus Bank of Nova Scotia and some other consortium of banks, the action involved an assertion that the banks had interfered with the contractual relationships of my clients in the process of attempting to – they had obtained a lease. They had failed to get a subordination and attorneyment agreement from the lender, allowing them to proceed to complete the build-out of the main showroom. The Aladdin ultimately, and I think it was general knowledge at that time, was headed for Chapter 11. We brought an initial litigation. That case was settled. Then we brought this action against the banks for interference in the business relationships of my client. That action was initially filed, I believe, in March of 2003. After having done all that we could have done, while awaiting the answer, we found that the case had been removed to federal court. Subsequently, we filed the appropriate certification of all interested parties. You didn't receive notice of the removal? The notice of removal occurred. I thought I heard you argue that you discovered it had been removed. I apologize. We said that it was properly removed. You were properly notified. It was properly removed. Okay. Go ahead. There's no question of that. After removal to federal court, my office filed the certificate of notice to interested parties on April 30th. On May 12th, we filed our joint status report. Then on May 30th, the motion to dismiss all claims was brought by the defendant banks. That was apparently served on my office, Your Honor, about June 2nd, making the opposition typically due about June 17th. That was the error. Someone failed to properly calendar that when it was subsequently discovered by the attorney, Your Honor, about July 2nd. We're familiar with all of this. I'll move on. Can we kind of cut to the chase? Why don't you tell the panel what your meritorious claim was? We believe that we had a number of meritorious claims, interference with business relations in particular. We pled those claims. We had fraud claims against the bank. But my understanding is that the ultimate determination by the judge, when the trial court judge rejected our late filed opposition, despite the fact that it had been stipulated to by opposing counsel, he effectively, best as I can read his order, granted the motion to dismiss as though it was unopposed. There's no question that we had obtained the stipulation, but apparently the second error was under Local Rule 6-1, you needed to have listed on the first page of the motion the original filing date of the plaintiff's, of the defendant's motion on our opposition. You filed a 60-B motion, didn't you? We filed a 60-B motion two days later. And doesn't that require a showing of a meritorious claim? We believe that we did in that motion. Could you do that in district court? We referenced in our 60-B motion those arguments that we felt had substance and needed to be tried ultimately to a jury. And let me just glance at the opposition that we ultimately did file, so I'm not speaking out of turn here. We referenced in our opposition that's attached at 8 to our attached pleadings the reasons why we thought there was basis for liability. We referenced the specific fraud such as we knew at that early stage. We indicated that we intended to take appropriate discovery to flesh out those fraud claims. We also referenced the general interference with our business relationships. We believed very strongly based on testimony that had come out in the first case that the transactional attorney for the appellants here had received an indication that the bank was never going to grant that subordination agreement, that they in effect Let me just ask you what's on my mind. My understanding is this. You filed a Rule 60-B motion for relief from judgment. Correct. The other side, the bank, responded. Correct. And the heart of their response, or a significant portion of their response, was, Your Honor, the district court, they have to show you that they have a meritorious claim and they haven't done that. And my understanding is that in your reply, you said that that was not relevant. Well Is that right? Your Honor, I don't think we If the attorney that responded said it was irrelevant, then that would have been wrong. But my read of the very abbreviated, truncated order of the district court granting first their motion to dismiss and then coming back and saying, I'm also going to deny 60-B relief, far from adopting any reference to the pioneer factors or the Brioni's factors of the test, it simply didn't address any of those things. It referred to my firm. You can have the greatest excuse, the most sympathetic excuse in the world under 60-B, but if you don't show you have a meritorious claim, you're not entitled to relief. Correct? I understand that. But we believe that See, I don't read the law that way, but if that's your concern I don't concede that we have to show it, but I believe that we did. Wait just a moment. Your position, as I heard it a minute ago, was that you did need to show a meritorious defense. Is it your position that Rule 60-B requires that? It is not my personal position that it does, but it specifically arises, Your Honor, respectfully out of the facts of the order of dismissal and then the rejection of the 60-B motion. Well, I don't know about your personal – I'm not really interested in your personal opinion. The question is, in your view, does the law require under 60-B that there be a meritorious defense? I don't read it that way, Your Honor. In any event, the ultimate decision rejecting our 60-B motion very clearly did not address the requisite factors under Brioni's and under even the most recent Pinkay decision from this Court in which you rejected a desire on someone's part to seek a per se rule. I think that's appropriate. I think the trial court judge had the discretion, broad discretion as this Court has granted the trial court. However, I do believe it is the law of the Ninth Circuit that he had an obligation to address those factors. And in his decision, I find no such reference. Indeed, he makes some reference to our firm as having been lethargic. I don't know what else we could have done, save and accept, file our complaint, then the removal occurs. We file the requisite pleadings, the notice of intent, the joint state conference. We're waiting for a response of pleading. We get the response of pleading. Then the error is made. Yes, we filed that opposition about a week and a half late. But I believe the trial court clearly abused its discretion by both failing to reflect and or implement any of the pioneer factors, and additionally by failing or by basing Resting's decision on a clear and erroneous set of facts. I believe we had done everything we could have done to litigate to the ace at that point. I believe the court's determination to dismiss and then to reject the 60B claim constitutes a clear abuse of discretion. And the relief we're seeking here today, respectfully, is that there should either be a decision made to remand at the very least, directing the district court to apply those four factors, or alternatively, his decision should be overturned altogether. Let me just ask you, as a practical matter, what you say may have some legal weight, that we don't know what the basis of the decision was. But given that you have a judge who says that there's no reason on earth that he can imagine for justifying reconsideration, do you think there's any hope that you'll win once he applies the factors? If I didn't believe we had a meritorious case, I would not have brought it, Your Honor. Do you want to save any time for rebuttal? I would like to. Okay. We've got a little over a minute. Thank you. We'll hear from the bank at this time. Mr. Mintz. Good morning. Good morning, Your Honors. Benjamin Mintz, Caseholder Counsel for the Bank of Nova Scotia and the, I guess, the unnamed banks in this proceeding. Beginning with some of the comments that the panel has made, in terms of the question of whether 60B requires the showing of a meritorious defense, I think the precedent of the circuit is pretty clear on that. And I don't think the Pincade decision, which arose under federal rule of appellate procedure 4, changes that in any way. There are a number of cases we cited that make clear that a showing in that regard is necessary, and I can cite those, but I think they're all in our briefs. The Hammer case was the initial one. And although I think those initial precedents characterized the showing of a meritorious defense as a necessary requirement in a disjunctive manner, I would acknowledge that I believe the Pincade decision probably changes that and requires that the meritorious defense be considered as part of an equitable balancing, among all the other factors that are before the court at that time. I mean, none of these cases, Franchise Holding and the others, actually say that it's required, as I read them. They say these are the factors to be considered. And you don't have to, if you prove any one of those, it may be a basis for overturning a default. But it doesn't say you must show each of those, does it? That's how I interpret them. So in other words, basically, if they show excusable neglect, then they don't have to show at that stage necessarily a legitimate case, meritorious case. Is that correct? No. I think that I would say that the meritorious defense is one of the equitable factors in assessing whether excusable neglect exists under the circumstances. It's a practical policy consideration, isn't it? Why revisit it, reopen it, if there's nothing there, if there's no hope of success? Well, that's how I read the precedent of the prior cases. Particularly, I think the Hayhurst decision was very clear that the rule was stated in the disjunctive, and that's how we brief the matter. I'm not sure that that – that I can argue that in view of Pinke in the sense that that said no per se rules with respect to excusable neglect. I suppose it's a sliding scale to some extent that depending on how wrong your assessment is of the possibility of a meritorious case, it may well offset or not offset one of the others. Is that correct? That's right. I mean, I think that if there is no showing of a meritorious defense, that has to play a large – play a large consideration in deciding whether excusable neglect should be – exists under the circumstances. But what about the argument that we have no idea what standard the court imposed, even if we think it might be a reasonable decision? How can we assess and abuse discretion when we have no basis in terms of how the court exercised its discretion? Well, I think that we're – it would be nice if I were here today with a – and I'm sure the panel would appreciate having a decision that went through the factors and specifically outlined them. But I would refer the court to the Bateman decision, which particularly there, that's a case that was relied on heavily by appellant. But one thing that's important in that case is that there the movement did not cite Pioneer or Brion's in its 60B motion, nor did it cite any of the applicable equitable factors. And here, that was clearly the subject of the 60B motion that was made. By the movement and the appellant here. Those issues were fully briefed and really all of their moving papers were centered on those issues. There's nothing in the – you know, while the order doesn't have a lot in it, you know, it's really just a denial of the motion, there's no indication that he – that Judge Hunt actually disregarded the pleadings. We the banks never really disputed that those factors were relevant for consideration. We admittedly had stipulated. In fact, we were the ones who contacted them and said, you know, where's your response? That's the only reason that they knew that they missed the deadline. And, you know, we turned around the stipulate and then the judge on his own issued the decision. So in the context of making our response, we focused, I think, virtually solely on the meritorious defense as opposed to the other equitable factors. But we never disputed that they were relevant and applicable. So I don't think – you know, I think sitting here today it's fair to assume that the judge did apply those factors and issued a two-page decision that was very brief and was straight to the point. And I think that it would be a waste of all of our time to send this back to the court and have him do what I think we all would anticipate him doing if it were sent back to him. It would be one thing if we disputed the standards or if the standards weren't presented to the court, but they all were here. And, you know, I think that that's really telling in terms of what the judge had before it and how he decided the matter. Do you think it matters that when this case was decided in July of 2003, that Pinkay wasn't on the table at that point? I think that there was – I don't see anything in the earlier precedent that – you know, if you look at the cases that were argued by the appellant and by us in our papers, there really wasn't a push to establish a per se rule under the circumstances. We raised the meritorious defense, but we never argued, as was argued in Pinkay, that, you know, their utter failure to calendar the matter was, you know, per se excusable neglect. We never took that position. In fact, your position was let's look at the merits. It's almost as if the motion to dismiss were dealt with by the district court on the merits, and you're here trying to defend it should have been dismissed for that reason. That's right. And I think that – I don't think Pinkay changes, as I started, the notion that the merits have to be considered in the equitable balancing. Turning to the merits, I think it's important to not lose focus of what happened here. Aladdin filed for bankruptcy, and shortly thereafter, the appellant commenced an action against Aladdin, alleging virtually all of the same claims that are in the complaint that they then brought against the banks more than a year late – more than, I think, about a year and a half later. The banks participated in the settlement discussions. We – the preexisting banks were also the diplenders to Aladdin and had rights of consent with how – with regard to how money was spent by the Aladdin. And given that we had claims on virtually all of the assets of the Aladdin, they weren't going to proceed with the settlement without our input. So we participated in that – in the dialogue regarding that litigation. And show clubs knew that. Never was – Show clubs knew that. It couldn't have been a possibility, and the settlement agreements worked out. It would explicitly have covered Aladdin's lenders. It certainly could have if we knew that they had claims against us. They never raised that in the context of these discussions. And, you know, we really feel sandbagged. I mean, we agreed to release our collateral to pay these claims for what we thought was making this matter go away. Never was there ever any articulation that they thought they had claims against the bank in this context. I mean, you know, I guess if I – going back to my – in future experience, any time I represent a bank group and someone sues the debtor, I'm going to make sure I get a release. But, you know, I can't anticipate that in every circumstance, particularly where there was no indication, no expectation, and nothing that suggested that there were any – was any liability by the bank. You know, looking at the complaints, I mean, they are identical. We're talking about the same facts and circumstances, the same transactions. And it strikes me as very compelling that they're suing the bank for directing how the Aladdin took action when they released Aladdin for that underlying action. And particularly where these were the bank's assets that provided for the payment of these claims. I think that to permit this action to go forward in that regard really undercuts the notion of the settlement and what the parties bargained for under the circumstances. Okay. Thank you for your argument. Rebuttal, Mr. Canister? Thank you. Bankruptcy litigation has sometimes been described, at least to me, as kind of litigation in hype or speed. It's compressed. It's quick. You're doing everything you can as quickly as you can, including the discovery process. No, we did not name the bank an initial cause of action because the initial cause of action was essentially a breach of contract dispute between a landlord and a tenant. The lease had been executed. All the attachments had provided. Save and accept one page that said the SNDA will be provided later. It's being reviewed by bank counsel. We never got it because we never got it. We could never get financing. We spent over a million dollars. We did not recover all of those sums, let alone future lost profits, from what would have been a 20-year lease at a Las Vegas showroom. We understand why the bank may not want us to do it. We simply didn't know of the bank's involvement until almost the end of the discovery period. In any event, as you just heard counsel reflect, they were aware. They referred to it as being their assets that were used to pay us the $400,000 that was the settlement. The bottom line is they could have asked to have been included. They did not. In just a quick review now of the opposition that was filed on July 8th, we referenced all of the reasons why we have meritorious claims in response to their motion to dismiss. We point out that the settlement does not apply to the bank because the bank is not a party to the settlement. The bank did not subsequently acquire an interest in it. Are you reading from that? From the opposition that was filed on July 8th, although it was never accepted by the court because of the failure to put on the first page instead of the third page of the original filing date of plaintiff's motion. We point out the settlement does apply to the bank because Circles of America did not sell its interest in the project and the bank did not acquire an interest. We point out that we had fraud claims. Granted, we're at the beginning stages of litigation. We may need to flesh and move to amend the complaint as we learn more. We knew just the bare bones of an action. But respectfully, we look forward to the opportunity to argue their motion to dismiss on the merits in front of the trial court judge. And I believe that that's the purpose of 60B1. I believe that was denied here in totality, and I believe the only record we have of why the judge denied that 60B1 motion for relief is because somehow he believed we'd either failed to prosecute it in a timely fashion and or because he totally, as a trial court judge, refused to look at the four factors that this honorable institution has said time and time and time again right up through Pinke that negligence per se, negligence by an attorney's office and staff and failing to calendar may constitute the basis for a 60B relief motion. We'd like a chance to have that heard, that 60B motion on the merits, the pioneering factors applied. We think we'll succeed, and then we'll be allowed to argue this case on its merits. Thank you. Thank you for your argument. The case just argued will be submitted for decision. Counsel present on the next case, which is Peterson v. Gonzales? Ms. Chang? Mr. Erb here yet? We're going to take a five-minute recess or less. Mr. Erb is arguing in courtroom one on another case. The clerk will let us know when he returns, and we'll be right back. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Hawkins, McKeown, Clifton